UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MING LI; WENJUN SHAN,

        Plaintiffs,

  v.

COLONIAL BT, LLC,

        Defendant.

Civil Action No.
3:14 - CV - 999 (CSH)

JULY 21, 2014

**ORDER**

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

     Plaintiff spouses Ming Li and Wenjun Shan ("Plaintiffs") bring this civil action against Colonial BT, LLC ("Colonial") seeking damages for personal injuries Ming Li allegedly sustained on July 19, 2012, while swimming in a public swimming pool operated by Colonial at 1451 Foster Drive, in Willimantic, Connecticut. At that time, Ming Li was a resident of the Colonial Townhouse Apartments, which were located on Foster Drive and owned, operated and maintained by Colonial. Doc. 1 (Complaint), ¶¶ 1-2. Specifically Ming Li resided at 37H Foster Drive and was given access to the pool as a resident and/or invitee of the apartment complex. *Id.*, ¶¶ 2-3.

     On or about July 19, 2012 at 2:50 pm, Ming Li "was an invitee at the swimming pool" and was "found at the bottom of the deep end of the pool lifeless and unconscious by Linda Shibenski," an employee of Colonial, who, "[a]fter a prolonged struggle," managed "to retrieve the plaintiff from the deep end of the swimming pool." *Id.*, ¶¶ 4, 10. Ming Li was ultimately resuscitated by

emergency medical personnel and transported to Hartford Hospital for emergency care. *Id.*, ¶ 11. Although Ming Li has received "extensive hospital and rehabilitative care," he allegedly "continues to have significant physical impairments rendering him totally disabled from gainful employment and normal activities of daily living." *Id*.

Ming Li and his wife, Wenjun Shan, bring this action seeking recovery from Colonial under the following common law claims: (1) negligence (failure to operate and maintain the pool in a safe condition and to provide an appropriate emergency response and monitoring system); (2) loss of consortium (alleging that Wenjun Shan has been deprived of her husband's "financial support, services, care, society, affection, companionship and consortium"); and (3) nuisance (alleging that the condition of Colonial's swimming pool "had a natural tendency to create danger and inflict injury upon person and property" and constituted a "continuing" danger to "members of the general public including the plaintiff").[1] Plaintiffs conclude their Complaint, praying for "money damages" (in an undetermined amount), "as well as any other relief which the Court may deem equitable." *Id*., p. 8. They also demand a jury trial. *Id.*

Upon careful review of the Complaint, the Court has determined that Plaintiffs have failed to plead or present a jurisdictional basis for this case to proceed in federal court. "[I]rrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000). The Court thus has the obligation to determine *sua sponte* whether federal subject

---

[1] For unknown reasons, Plaintiffs' Complaint includes a fourth count for "loss of consortium" that is identical to (that is, virtually repeats) their "loss of consortium claim set forth in the second count. Absent any explanation regarding these identical counts, the Court construes them as setting forth one claim for loss of consortium.


matter jurisdiction is present.

The Complaint is deficient in that it fails to allege the basis for this Court's subject matter jurisdiction. The pleading simply recites the asserted facts and proceeds directly to the Counts for relief.

Given the exclusively state law claims asserted by Plaintiffs, there is no basis upon which this Court may assert "federal question" subject matter jurisdiction under 28 U.S.C. § 1331.[2] Conceptually, diversity of citizenship is an alternative jurisdictional basis. However, as set forth below, Plaintiffs have failed to plead sufficient facts to demonstrate "diversity of citizenship" subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a).[3]

Accordingly, before the Court may allow this action to proceed, it must determine whether it has "diversity of citizenship" subject matter jurisdiction. To do so, the Court will seek additional

---

[2] 28 U.S.C. § 1331, captioned "Federal question," provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[3] 28 U.S.C. § 1332(a) provides, in relevant part:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

    (1) citizens of different States;

    (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties . . . .

facts regarding the citizenship of the parties and the amount in controversy.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

Pursuant to Article III of the Constitution, a federal court has limited jurisdiction. It may only exercise subject matter jurisdiction where either: (1) the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331; or (2) there is complete diversity of citizenship between plaintiff and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1). *Strawbridge v. Curtiss*, 3 Cranch 267, 1806 WL 1213, at * 1 (February Term 1806). *See also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir.2000) (delineating two categories of subject matter jurisdiction).

A federal court must determine with certainty whether it has subject matter jurisdiction over a case pending before it.  If necessary, the court must consider its subject matter jurisdiction *sua sponte*.  *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir.2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."), *cert. denied*, 549 U.S. 1282 (2007); *see also Univ. of South Alabama v. American Tobacco* Co., 168 F.3d 405, 410 (11th Cir. 1999) ("a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking").  The court must "review a plaintiff's complaint at the earliest opportunity to determine whether [there is in fact] subject matter jurisdiction."  *Licari v. Nutmeg Ins. Adjusters, Inc.*, No. 3:08mc245(WIG), 2008 WL 3891734, at * 1 (D. Conn. July 31, 2008) (citing *Transatlantic Marine Claims Agency,*

*Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107-08 (2d Cir. 1997) (holding that district court may raise issue of subject matter jurisdiction *sua sponte* at any time). Unlike personal jurisdiction, "subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

In general, if subject matter jurisdiction is lacking, the action must be dismissed. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). *See, e.g., Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at 700-01 ("If subject matter jurisdiction is lacking, the action must be dismissed."); *Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory."); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("Where jurisdiction is lacking ... dismissal is mandatory.") (quoting *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994)).

In the case at bar, upon review of the Complaint, it appears that the only potential basis for subject matter jurisdiction is diversity of citizenship, 28 U.S.C. § 1332(a). In other words, there are no claims arising pursuant to federal statute or the United States Constitution. In order for diversity of citizenship to exist, the plaintiff's citizenship must be diverse from that of all defendants. *See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)). Moreover, such diversity

must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002). *See also Wolde–Meskel v. Vocational Instruction Project Comm. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir.1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule.")

Because the Complaint states that Plaintiff Ming Li "is currently a resident of China," Doc. 1, ¶ 2, the Court notes the possibility that additional facts may reveal that he is also a citizen of China. In general, diversity may exist between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). However, "the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." *Id. See, e.g.*, *Kato v. County of Westchester*, 927 F.Supp. 714, 716 (S.D.N.Y. 1996) ("aliens who have been accorded lawful permanent resident status under the immigration laws are considered aliens 'admitted for permanent residence,' while aliens admitted to the United States on temporary non[-]immigrant visas are not."). As one esteemed commentator summarized:

> [I]t is clear that [§ 1332(a) ] affects only the status of those aliens with "green cards" — admitted to the United States for permanent residence. Thus, aliens present in this country on any lesser status will still be considered aliens, able to invoke alienage jurisdiction against a citizen of a state. . . .

1 James W. Moore, Moore's Federal Practice ¶ 0.75[1.–5], at 800.56 (1991). *See also* Ved P. Nanda & David K. Pansius, 1 *Litigation of International Disputes in U.S. Courts* § 5:8 ("Alien Venue and Diversity") (Westlaw update Mar. 2014) ("[a]lien citizens admitted to the United States for permanent residency may be treated like (as distinguished from 'deemed') citizens as would destroy diversity for purposes of §1332(a)(2)" ).

Therefore, if, for example, at the time this action commenced, Ming Li and/or his wife were Chinese citizens who were lawfully admitted for permanent residence in the United States and *domiciled* (as opposed to simply residing) in a state of which Defendant Colonial is also a citizen, the Court lacks subject matter jurisdiction.

B.    **Citizenship of Plaintiffs**

In the Complaint at bar, Plaintiffs allege that Ming Li "was a *resident* of 37H Foster Drive, in the Town of Willimantic, County of Windham and State of Connecticut" at the time of the incident in question. Doc. 1, ¶ 1 (emphasis added). The Complaint further states that "he is currently a *resident* of China where he is undergoing rehabilitation of his injuries." *Id*. (emphasis added). The Complaint, however, makes no reference to the nationality or *domicile* of either Plaintiff Ming Li or his spouse, Wenjun Shan, on the date the action was commenced, July 11, 2014.

With respect to an individual's citizenship, it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d Cir. 1997) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)). This is because an individual's citizenship for diversity purposes is determined by his or her *domicile*, not residence. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). *See also John Birch Soc. v. Nat'l Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967) ("it has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens").

"In general, the domicile of an individual is his true, fixed and permanent home and place of habitation" – *i.e,* "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983). *See also Palazzo*, 232 F.3d at 42; 13B C. Wright

A. Miller & E. Cooper, *Federal Practice and Procedure* § 3612, at 526 (2d ed. 1984).  It is well settled that although an individual may have several residences, he or she can have only one domicile at any one time.[4]  *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)  (for jurisdictional purposes, " '[d]omicile' is not necessarily synonymous with 'residence,' " and "one can reside in one place but be domiciled in another") (citations omitted); *see also Williamson v. Osenton*, 232 U.S. 619, 625 (1914) ("The very meaning of domicil[e] is the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by the law may be determined.  In its nature *it is one* . . . .") (citation and internal quotation marks omitted) (emphasis added).

"Domicile has been defined generally as a person's 'home' or permanent base of operations" and  "home is the place where a person dwells and which is the center of his domestic, social and civil life." *National Artists Mgmt., Inc. v. Weaving*, 769 F.Supp. 1224, 1228 (S.D.N.Y. 1991) (citations and internal quotation marks and brackets omitted).  Domicile is determined by the "totality of the evidence," and "no single factor is conclusive." *Id*. Among the factors to be considered are "where the person is employed, exercises her civil and political rights, pays personal taxes, maintains bank accounts, obtained a driver's license, . . . maintains real and personal property" and "whether the person owns or rents his place of residence, how permanent the residence appears, and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *Hicks v.*

---

[4]  The United States Supreme Court has described "residency" as occurring "when a person takes up his abode in a given place, without any present intention to remove therefrom." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).  "[S]uch place of abode becomes his residence . . . ." *Id.*  The test for residency is thus less stringent than the "more rigorous domicile test." *Id*.  For example, "residency" may be taken up for personal or business reasons and may be permanent for only a period of time. *Id.*

*Brophy*, 839 F.Supp. 948, 951 (D.Conn. 1994), *adhered to on reconsideration*, 841 F.Supp. 466 (D.Conn. 1994) (citations omitted). Furthermore, "the party's own statements concerning his intentions are relevant, but they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." *National Artists Mgmt.*, 769 F.Supp. at 1227-28 (citations and internal quotation marks omitted).

Rather than domicile alone, with respect to an alien litigant's citizenship for purposes of "diversity of citizenship," federal courts have also focused on "official immigration status." *Mor v. Royal Caribbean* Cruises Ltd., No. 12 Civ. 3845(JGK), 2012 WL 2333730, at * 1 (S.D.N.Y. June 19, 2012) (gathering cases). In particular, an alien who has been accorded lawful permanent residence from the United States (*i.e.*, has obtained a "green card") is considered a citizen of the state in which he is domiciled. In contrast, one who is admitted into the United States on a temporary, non-immigrant visa (*e.g.*, as a temporary visitor for business or pleasure) is an alien for purposes of citizenship. *See, e.g., Mor*, 2012 WL 2333730, at *2 (citing *Kato*, 927 F.Supp. at 715-17).

In the case at bar, Plaintiff Ming Li has alleged his *residency* at the time of his injuries and also when the Complaint was filed *without* establishing his *citizenship*. Citizenship, which is generally synonymous with domicile, may not be inferred from residency. *See Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399 (1925). Moreover, because Ming Li states that he resided in China as of the date of the Complaint, he must establish whether he is a United States citizen, a Chinese citizen, or even a citizen of another country.

If, on July 11, 2014, the date the Complaint was filed, Ming Li was a United States citizen *domiciled* in China, he is stateless for purposes of diversity. *See, e.g., Techno-TM, LLC v. Fireaway, Inc.*, 928 F.Supp. 2d 694. 697 (S.D. N.Y. 2013) ("United States citizens domiciled abroad

9

'are neither citizens of any state of the United States nor citizens or subjects of a foreign state, so that § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties.'") (*quoting Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001)). *See also Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir. 2008) (an American domiciled abroad is stateless for purposes of diversity, rendering ineligible for diversity the partnership in which he is a partner). The presence of a stateless litigant destroys diversity. *See, e.g., Techno-TM*, 928 F.Supp. 2d at 697 (because United States citizen failed to establish new domicile in a state of the United States by commencement of the action after returning from Costa Rica, "there [was] no diversity jurisdiction in this action").

If Ming Li was a citizen of China and domiciled there at the time his Complaint was filed, he is deemed an alien for "diversity of citizenship" jurisdiction. On the other hand, if he simply resided temporarily in China (*e.g.*, was undergoing rehabilitation treatments there) and (1) was actually domiciled in the United States at the commencement of the action and (2) had been granted permanent lawful residence in the United States, as opposed to obtaining a temporary visa, he is a citizen of the state where he was domiciled.[5] All of these facts are yet to be determined and Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.

Similarly, all of the above legal principles regarding citizenship for diversity purposes pertain to Ming Li's wife, Plaintiff Wenjun Shan. In the Complaint, she has provided no information

---

[5] Although Ming Li allegedly *resided* in China when the Complaint was filed, "a person may still be *domiciled* in a state even if a non-resident, so long as he or she has his home there and intends to return," *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) (emphasis added).

whatsoever regarding her domicile, residence, and/or citizenship at the commencement of this action. The Court cannot, therefore, determine which, if any, of the provisions of 28 U.S.C. § 1332(a) apply to this case and thus whether there is subject matter jurisdiction.

### C. Citizenship of Colonial BT, LLC

With respect to the citizenship of Defendant Colonial, a limited liability company, Plaintiffs provide no facts from which its citizenship may be determined. Plaintiffs simply state that "Colonial BT LLC, owned, operated, maintained and controlled the Colonial Townhouse Apartments with various apartments located on Foster Drive in the Town of Willimantic, County of Windham and State of Connecticut." Doc. 1, ¶ 1.

"The citizenship for diversity purposes of a limited liability company . . . is the citizenship of *each of its members*." *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006)(emphasis added), *cert. denied,* 549 U.S. 1047 (2006). Put simply, the "citizenship of a limited liability company is not the state in which it is organized or has its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied Bronze LLC*, No. 07 Civ. 1621(BMC), 2007 WL 1299251, at *1-2 (E.D.N.Y. May 2, 2007) (citing *Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, [51-52] (2d Cir.2000) and remanding removed action for lack of diversity jurisdiction).[6] In their Complaint, Plaintiffs have failed to provide the Court with the identities and citizenship of any, much less all, of Colonial's members. Citizenship of each member of the limited liability company must be known to insure that complete diversity exists

---

[6] *See also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127 n. 13 (2d Cir. 2011) (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000), as the appropriate "test for determining the citizenship of a limited-liability company").

11

between Plaintiffs and Defendant in this action.  Moreover, said citizenship must be established on the date Plaintiffs commenced this action, July 11, 2014.

**D.      Jurisdictional Amount**

Finally, even if the citizenship of the parties can be demonstrated to be diverse, the amount in controversy must exceed $75,000, "exclusive of interest and costs." 28 U.S.C. § 1332(a).  To invoke the jurisdiction of a federal court, one "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994).

In the case at bar, Plaintiffs include no formal "prayer for relief."  Rather, just before demanding a "trial by jury," Plaintiffs conclude by declaring that they "claim[ ] money damages," without specifying any particular amount. Doc. 1, p. 8.  Earlier, in the text of the Complaint, Plaintiffs describe in a general fashion the injuries Ming Li allegedly endured due to Colonial's negligence, stating that he "sustained serious physical injury," which is  "likely to be permanent in nature;" he is suffering from "significant physical and emotional pain;" and he will be limited "in the future . . . in his ability to engage in all of those of life's activities to which he had previously been accustomed and enjoyed." *Id.*, ¶¶ 15, 17.  Although Plaintiffs do not specify particular physical injuries, they allege that Ming Li "is undergoing rehabilitation for his injuries, " "received extensive hospital and rehabilitative care," and " continues to have significant physical impairments rendering him totally disabled from gainful employment and normal activities of daily living." *Id.*, ¶¶ 2, 11. Plaintiffs further  allege that Ming Li has "been forced to expend great sums of money for medical care and attention, doctors, hospitals, diagnostic studies, therapy, medicines and drugs." *Id.,* ¶ 13. Although he "was gainfully employed at the time of the occurrence," he will allegedly "be limited

12

[in the future] in his ability to engage in employment,"and thus has sustained "a loss of earnings and/or earning capacity." *Id.*, ¶ 16.  Finally, Plaintiffs contend that Ming Li's injuries have resulted in his wife's loss of his "financial support, services, care, society, affection, companionship and consortium." *Id.*, Second Count, ¶ 18.

It may well be that Plaintiffs seek damages in excess of $75,000.  However, Plaintiffs have neither prayed for this minimum jurisdictional amount nor delineated the damages arising from Ming Li's alleged "significant physical impairments." *Id.*, ¶ 11.  "[A] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *United Food & Commercial Workers Union,*, 30 F.3d at  301 (quoting  *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994)).  In the case at bar, as the parties asserting jurisdiction, Plaintiffs Ming Li and Wenjun Shan bear the burden of establishing that their claims exceed $75,000.[7]   If they cannot meet that burden, the action must be dismissed.

### III. <u>CONCLUSION</u>

In order to determine whether it has subject matter jurisdiction in this action, the Court hereby ORDERS the Plaintiffs to establish, by affidavit , citizenship for diversity purposes as of the date this action was commenced, July 11, 2014.

Specifically, Plaintiffs Ming Li and Wenjun Shan are each ORDERED to submit an affidavit indicating his or her state and/or country of citizenship at the commencement of  the action.  Each

---

[7]   Furthermore, in the event that  "jurisdictional  facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *United Food & Commercial Workers Union*, 30 F.3d at 305 (quoting *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189  (1936)).

must declare, as of July 11, 2014: (1) his or her country of citizenship; (2) if not a citizen of the United States, whether he or she had permanent residency status or a temporary visa to reside in the United States, (3) the state and country in which he or she was *domiciled* and principally established or his "true fixed home," and any helpful facts in support of that domicile; (4) the names, if any, of other states or countries in which he or she had a residence. If such additional residences were maintained, the affidavit must further provide: (a) the location of the residences kept and (b) the approximate length of time spent at each residence.

With respect to the amount in controversy, Plaintiffs must provide an estimate of their alleged damages in this action, indicating the general bases for this calculation. Upon conclusion of the calculation, Plaintiffs must explicitly declare whether they allege that their damages exceed the sum or value of $75,000, the jurisdictional amount pursuant to 28 U.S.C. § 1332(a).

Limited liability company Colonial BT, LLC is ORDERED to submit an affidavit explicitly setting forth the identities and state(s) of citizenship of each of its members as of July 11, 2014. If said members are individuals, Colonial must provide their states of domicile. If any members are corporations, Colonial must indicate all states of incorporation and the principal place of business for each corporation. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). If the members include any limited liability company, Colonial shall establish the citizenship of each member of that limited liability company.[8]

---

[8] The Court takes judicial notice that as of the present date (as opposed to the date the action was commenced), although Colonial BT, LLC has a business address of "6039 N. Bernard St., Chicago, IL 60659," it has publicly listed as its sole principal: "Bassman Family LP Member," who has a business address of "4154 Madison Ave., Trumbull, CT 06611." *See* ***http://www.concord-sots.ct.gov/CONCORD/online?sn=PublicInquiry&eid=9740*** (website of

Colonial may also, in its affidavit, provide any relevant facts to challenge the allegation that Plaintiffs' claims exceed the statutory jurisdictional amount of $75,000. In making such a challenge, Colonial may, if so advised, present competent proof that the matter in controversy is less than the jurisdictional amount.

All parties shall file and serve their affidavits regarding citizenship on or before **August 22 2014.** Because Defendant Colonial has made no appearance in this action as of this date, Plaintiffs' counsel is directed to serve a copy of this Order upon Defendant Colonial by certified mail at the same address at which Plaintiffs served the Summons and Complaint in this action.

All case deadlines are stayed pending the Court's review of the affidavits. If, upon review, the Court determines that it possesses subject matter jurisdiction, the action may proceed. Otherwise, in the absence of such jurisdiction, the Court will dismiss the action.

It is SO ORDERED.

Dated: New Haven, Connecticut
July 21, 2014

                                              */s/Charles S. Haight, Jr.*
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge

---

Connecticut Secretary of the State, Commercial Recording Division (abbreviated as "CONCORD" files)). If the sole Bassman Family member and either of the Plaintiffs were both citizens of Connecticut for "diversity purposes" on the date this action was filed, July 11, 2014, this Court lacks subject matter jurisdiction.