**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MING LI; WENJUN SHAN, | Civil Action No. |
| Plaintiffs, | 3:14 - CV - 999 (CSH) |
| v. | |
| | **SEPTEMBER 28,  2015** |
| COLONIAL BT, LLC, | |
| Defendant. | |

 **RULING ON MOTION FOR A MORE DEFINITE STATEMENT**

**HAIGHT, Senior District Judge:**

**I.   INTRODUCTION**

Plaintiff spouses Ming Li and Wenjun Shan ("Plaintiffs") commenced this action against Colonial BT, LLC ("Colonial") seeking damages for personal injuries Ming Li  allegedly sustained on July 19, 2012, while swimming in a public swimming pool operated by Colonial at 1451 Foster Drive, in Willimantic, Connecticut.   On that date, Ming Li was a  resident at the Colonial Townhouse Apartments, which were  located on Foster Drive,  and owned, operated and maintained by Colonial.  Doc. 7 (Amended Complaint), at 2-3 ("First Count)," ¶¶ 1-2 .  In particular, Ming Li resided at 37H Foster Drive and was given access to the pool as a resident of the apartment complex and/or invitee at the swimming pool. *Id.*, ¶¶ 2-3.

On or about July 19, 2012 at 2:50 pm, Ming Li  "was an invitee at the swimming pool" and was "found at the bottom of the deep end of the pool lifeless and unconscious by Linda Shibenski," an employee of Colonial, who, "[a]fter a prolonged struggle," managed "to retrieve [Ming Li] from

1

the deep end of the swimming pool." *Id.*, at 3-4, ¶¶ 4, 9-10.   Ming Li was ultimately resuscitated

by emergency medical personnel and transported to Hartford Hospital for emergency care. *Id.*, at

4, ¶ 11.  Although he has received "extensive hospital and rehabilitative care," Ming Li allegedly

"continues to have significant physical impairments rendering him totally disabled from gainful

employment and normal activities of daily living." *Id.*

Ming Li and his wife, Wenjun Shan, brought  this action seeking recovery from Colonial

under the following common law claims: (1) negligence (failure to operate and maintain the pool in

a safe condition and to provide an appropriate emergency response and monitoring system); (2) loss

of consortium  (alleging that Wenjun Shan has been deprived of her husband's "financial support,

services, care, society, affection, companionship and consortium"); and  (3) nuisance (alleging that

the condition of Colonial's swimming pool "had a natural tendency to create danger and inflict injury

upon person and property" and constituted a "continuing" danger to "members of the general public

including the plaintiff").[1]   Plaintiffs conclude their Complaint by praying for "money damages in

excess of $75,000, exclusive of interest[ ] and costs,  as well as any other relief which the Court may

deem equitable."[2] *Id.*, p.10.   They also demand a jury trial.  *Id.*

---

[1]  Plaintiffs' Complaint includes a fourth count for  "loss of  consortium"  that  is identical
to (that is, virtually repeats) their  "loss of consortium" claim set forth in the second count.  Absent
explanation regarding these identical counts, the Court alternatively construes these claims as setting
forth one claim for loss of consortium by Plaintiff Wenjun Shan with respect to her husband, Ming
Li, or one separate  claim by each Plaintiff for loss of consortium with respect to the other.  In any
event, the Fourth Count is not at issue in the present motion and ruling thereon.

[2]  As this Court has previously determined, the Court has "diversity of citizenship" subject
matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Specifically, this action is between "citizens of
a State and citizens or subjects of a foreign state" and the amount in controversy "exceeds the sum
or value of $75,000." 28 U.S.C. § 1332(a)(2).   Plaintiffs are both citizens of the People's Republic
of China and Defendant Colonial BT, LLC is a citizen of Illinois and Connecticut, based on the
states of citizenship of its members. *See* Doc. 16 ("Order," filed 9/26/2014).

## II.  PENDING MOTION

Pending before the Court is Defendant's "Motion for a More Definite Statement" [Doc. 17], pursuant to Rule 12(e), Fed. R. Civ. P.   Through this motion, Colonial "seeks a more definite statement of Count Three of Plaintiffs' Complaint because, as currently drafted, it is so vague and ambiguous that Defendant cannot frame a responsive pleading."  Doc. 17, at 1.

Before analyzing the substantive allegations contained in the Third Count, the Court notes that although Defendant's motion  addresses "Plaintiffs' Complaint,"  Plaintiffs amended their original complaint prior to the filing of the  present motion.  *See* Doc. 7 ("Amended Complaint," filed 7/22/2014).  Therefore, the pertinent and operative complaint in this action is the "Amended Complaint" [Doc. 7].   In point of fact, the Third Count in the Amended Complaint mirrors the language contained in Third Count of the original Complaint.  *See* Doc. 1 & 7, Third Count ( ¶¶ 18-21).  To the extent that incorporation of the allegations in the preceding paragraphs (¶¶ 1-17)  in the Amended Complaint changes or expands any factual allegations contained in the original Complaint, the allegations appearing in the Amended Complaint are the operative ones.   In sum, the Court construes Colonial's motion for a more definite statement  as addressed to the Amended Complaint and resolves the motion herein.

## III.  DISCUSSION

### A.  Rule 12(e) - Standard of Law for A More Definite Statement

With respect to a motion for a more definite statement, Federal Rule 12 (e) of Civil Procedure provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot

reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

"However, such a motion should not be granted if the complaint complies with the 'short and plain statement' requirement of Federal Rule of Civil Procedure 8 because the 'aim of Rule 12(e) is to remedy unintelligible pleadings, not to correct for lack of detail.'" *Columbia Ins. Co. v. Brown Shoe Co., Inc.*, 233 F.R.D. 250, 251 (D.Conn. 2005) (quoting *Pullen v. NorthStar Presidio Mgmt. Co., LLC*, No. 98cv771 (WWE), 1998 WL 696010, at *1 (D.Conn. Sept. 11, 1998)). Moreover, such motions are "generally disfavored" and "not intended as a substitute for the 'normal discovery process.'" *Columbia Ins.*, 233 F.R.D. at 251 (quoting *Allstate Ins. Co. v. Seigel*, 312 F.Supp.2d 260, 277 (D.Conn. 2004)). *See also Pullen*, 1998 WL 696010, at *1 ("because motions for more definite statements tend to delay and add little that discovery cannot provide, they are generally disfavored").

## B.   Defendant's Argument in Support of the Motion

Defendant's present motion is addressed to Plaintiffs' Third Count in the now Amended Complaint.  That count, captioned "Nuisance," incorporates by reference the first seventeen paragraphs of the Amended Complaint.  Then, in pleading a claim for nuisance, Plaintiffs allege broadly that there existed "safety concerns" at the public swimming pool operated by Colonial at 1451 Foster Drive, in Willimantic, Connecticut, on July 19, 2012.  Doc. 7 ("Third Count"), at 9, ¶ 18.  On that date, "the pool license had [already] issued conditioned upon addressing [those] specific safety concerns," but the "concerns were not adequately and appropriately addressed" so that the "use of the pool under such circumstances was unlawful and unreasonable." *Id.*  Plaintiffs further allege that the "subject swimming pool complained of had a natural tendency to create danger and inflict injury upon person or property." *Id.*, ¶ 19.  Moreover, on the date of Ming Li's  near-

4

drowning incident in that pool, "the danger created by operation and use of the subject swimming pool was a continuing one . . . and constituted a nuisance to members of the general public including [Ming Li]." *Id*., at 10, ¶ 20. Plaintiffs finally conclude that "[t]he existence of the nuisance . . . was a proximate cause of [Ming Li's] injuries and damages" in this action. *Id*., ¶ 21.

In its motion for a more definite statement, Defendant characterizes the Third Count as a combination claim, "alleg[ing] Negligence, Loss of Consortium, and Nuisance." Doc. 17, at 2. Moreover, Defendant asserts that the language contained in this Count "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Id*., at 3 (quoting Fed. R. Civ. P. 12(e)). Defendant also asserts that "[a]lthough Rule 8 of [the] Federal Rules of Civil Procedure provides that no technical forms of pleadings or motions are required, the Rule also requires a short and plain statement of the claims showing that the pleader is required to relief." *Id.* And where the allegations in the Complaint are insufficient to advise the Defendant of "the nature of the claims" against it, the Defendant is not required to respond. *Id.*

In the case at bar, Colonial also argues that the allegations in Plaintiffs' Third Count do not make clear whether the claim is one for a "public or private nuisance." *Id.* Defendant claims that "Plaintiff[s] have included an amalgation of both" forms of nuisance, "but seemed to stop short of fully pleading either." *Id.* Defendant Colonial thus declares that it "is entitled to a clear presentation of the precise cause of action" that Plaintiffs are pursuing in that count. *Id.*

## C.   <u>Plaintiffs' Objection</u>

In response to Defendant's motion, Plaintiffs object, arguing that they "have alleged a common law nuisance claim" against Colonial. Doc. 19, at 1. Rather than focusing on their

particular allegations regarding "nuisance," Plaintiffs assert that Defendant's motion is defective because it does "not provide[ ] any analysis or authority for [Defendant's] position, or suitable reasons why [Colonial] cannot respond" to the Amended Complaint. *Id.* Under such circumstances, Plaintiffs conclude that "Defendant's Motion should be denied." *Id.*

Plaintiffs complain of the "dilatory effect" of motions for a more definite statement, justifying why they are disfavored. *Id.* (collecting authorities). In addition, Plaintiffs stand boldly behind the language of their Amended Complaint, arguing that it "is not vague or ambiguous," and Colonial has "made no such showing." *Id.*, at 2. Because "[f]ederal pleading is notice pleading, not fact pleading," Plaintiffs' Amended Complaint "more than satisfies federal pleading standards." *Id.* (citing *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 20 (2d Cir. 1982) ("a complaint need not state 'facts' or 'ultimate facts' or 'facts sufficient to constitute a cause of action.'")).

Plaintiffs agree that they have "recited both the facts and the common law claim for relief for both private and public nuisance." *Id.* However, they contend, " Fed. R. Civ. P. 8(a) does not require that a notice pleading complaint be separated into counts." *Id.* Rather, a single set of facts may comprise "the basis for multiple claims for relief." *Id.* In addition, Plaintiffs assert that the complaint must only state separate counts when there are separate transactions or occurrences" and there was only one such event in the case at bar. *Id.* (citing Fed. R. Civ. 10(b)). Because Plaintiffs believe that they "have properly pleaded a cause of action for both public and private nuisance," they argue that the Defendant's motion for a more definite statement should be denied. *Id.*

Defendant has filed no reply to Plaintiffs' objection, resting on its arguments in the original memorandum in support of the motion. Both sides rely on alleged inadequacies of their opponents' legal positions to entitle them to prevail.

D.  **Court's Findings**

Examining the allegations in the Third Count, I conclude that this is the rare case where a motion for a more definite statement is proper pursuant to Rule 12(e), Fed R. Civ. P.  As set forth *infra*, under Connecticut law, "[t]here are two types of nuisance: public and private." *Couture v. Bd. of Educ.*, 6 Conn.App. 309, 314 (1986).  As Plaintiffs themselves admit, they have combined allegations for both private and public nuisance into one conglomerate count in their Amended Complaint.  In so doing, Plaintiffs failed to label the particular kinds of nuisance claim they assert in the Third Count, and instead plead a combination of these claims, hoping to incorporate more than one kind, without acknowledging the effect.[3]

White it is generally acceptable for a plaintiff to plead multiple claims in one count if those claims are based on one transaction or occurrence and, consequently, the same set of facts, it must be clear in the complaint which particular claims are alleged.

In the case at bar, the facts supporting each form of nuisance are not identical because the nuisance claims have their own essential elements. A conglomerate claim with no delineation regarding which facts support which claim is inherently vague. For purposes of clarity, to allow a defendant an adequate opportunity to respond, it is often better practice for a plaintiff to plead separate counts for his or her claims.  The Court will thus analyze whether Plaintiffs have, as alleged, set forth a claim for private and/or public nuisance and then explain if and why these claims should be re-pled or separated.

---

[3] Such a combination reminds one of the term adopted by Queen Elizabeth II to describe her favorite mealtime activity as a child – namely, creating a large "hoosh-mi," by stirring all of the food on her plate into one combined concoction.  *See* https://www.wordnik.com/words/hoosh ("Fairly mysterious is the word hoosh-mi, from the royal family of England."). Plaintiffs' combined nuisance action is thus a "hoosh-mi" of multiple nuisance claims.

7

1.      **Private Nuisance**

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Pestey v. Cushman*, 259 Conn. 345, 352 (2002) (quoting  4 Restatement (Second), Torts § 821D (1979)).  *See also Herbert v. Smyth*, 155 Conn. 78, 81 (1967). The law of private nuisance arises from the general principle that "[i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." *Nailor v. C.W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245 (1933). "The essence of a private nuisance is an interference with the use and enjoyment of  land." W. Prosser & W. Keeton, *Torts* (5th Ed.1984) § 87, p. 619.

Under Connecticut law, "[a] private nuisance exists only where one is injured in relation to a right he enjoys by reason of his ownership of an interest in land." *Webel v. Yale Univ.*, 125 Conn. 515, 525 (1939).  The essential elements of a private nuisance claim in Connecticut are: (1) an unreasonable interference with the plaintiff's use and enjoyment of his or her property; (2) the defendant's conduct was the proximate cause of the unreasonable interference; and (3) if injunctive relief is sought, that the defendant's conduct will cause irreparable harm and there is no legal remedy. *See, e.g., Pestey*, 259 Conn. at 352  (adopting  basic  principles  of 4 Restatement (Second), *Torts* §§ 821D,  822 (1979)); *Reichenbach v. Kraska  Enter., LLC*, 105 Conn. App. 461, 470 (2008) (pleadings held sufficient to allege that defendant's conduct constituted a nuisance and that plaintiffs were specifically and materially damaged by that conduct).[4]

In particular, in assessing a private nuisance claim and determining the "unreasonableness"

_____

[4]  *See also* 16A Conn. Prac., Elements of an Action § 18:1.

of the defendant, "[c]onsideration must be given not only to the interests of the person harmed but also [to] the interests of the actor and to the interests of the community as a whole." *Pestey,* 259 Conn. at 352 (quoting  4 Restatement (Second), *Torts* § 826, comment (c) and citing *Walsh v. Stonington Water Pollution Control Auth.*, 250 Conn. 443, 456-57 (1999)).  Unreasonableness is not determined in the abstract, but rather under the circumstances of the particular case. *Wetstone v. Cantor*, 144 Conn. 77, 80 (1956).

Examining Plaintiffs' "nuisance" claim in the Third Count with respect to a claim for private nuisance, focusing first on the paragraphs incorporated by reference into this count, one finds that Plaintiffs allege that Ming Li was a "resident of 37H Foster Drive," the Colonial Townhouse Apartments, on July 19, 2012; Doc. 7, at 3 ("First Count"), ¶ 2; and, at that time, Colonial "operate[d] a public swimming pool at 1451 Foster Drive," – on the premises of the Colonial Apartments – "which swimming pool was open for use to residents of the apartment complex and their invited guests, including . . . Ming Li," *id.*, ¶ 3.

Furthermore,  Plaintiffs make allegations relating to the danger created by the Colonial Apartments  pool.[5]  For example, Defendant allegedly failed to install a lifeline in the pool; *id.*, at 5 , ¶ 12.f., at 7, ¶ 12.v.; there was no "appropriate lighting on the pool deck and/or the pool surface and/or on the bottom of the pool;" *id.*, at 5-6 , ¶ 12.g.;  there was a problem with "water clarity" in that Defendant "permitted water to become cloudy further obscuring visibility," thereby allowing the water to become "unsafe," *id.*, at 6, ¶ 12.l.; the pool lacked "first aid[ ]," "resuscitation equipment," and a "device for emergency communications," *id.*, ¶¶ 12.m.- n.; the pool lacked "depth markers,"

---

[5]  Pursuant to Rule 10(c), Fed. R. Civ. P., "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."

and "failed to provide appropriate safety signs which would have communicated the sudden drop off from shallow to deep end," *id.*, at 7, ¶¶ 12.q., t.; the pool failed to provide a "break point line," *id.*, ¶ 12.w.,  a "painted line at the break point," *id.*, at 8, ¶ 12.y.; and the pool had no "shepherd's hook or other equipment suitable for rescue," *id.*, ¶ 12.z.

These allegations describe conditions which combine to allege sufficiently that Ming Li had a rental interest in the property of the Colonial Apartments; the pool operated on the premises of the apartments posed a threat of danger and possible injury upon those who used it; the danger created was continuing (till at least the time of Ming Li's injury); operation of the pool was unreasonable or unlawful (in violation of the conditions of the state pool license); and (4) the nuisance proximately caused Ming Li's injuries.

As to interference with Ming Li's use and enjoyment of his rental property at Colonial Apartments, under Connecticut law, a private nuisance includes "*all injuries* to an owner or occupier in the enjoyment of the property of which he is in possession, without regard to the quality of the tenure." *Webel*, 125 Conn. at 525 (internal quotation marks omitted).  Although "[a] swimming pool or recreational center is not a nuisance per se,"  *Marco v. Swinnerton*, 22 Conn. Supp. 335, 336 (1960), a pool  becomes a nuisance when, as alleged here, the pool creates a dangerous condition on the premises of the rental property where the plaintiff resides.

Specifically, Connecticut courts recognize that "a  tenant may bring an action for private nuisance against a landlord if the defective condition that injured the tenant was on the part of the premises over which the landlord retained control." *Simmons v. Papadopoulos*, No. CV000273005S, 2001 WL 419232, at *2 (Conn. Super. Ct. April 11, 2001).  *See also  Fonseca v. Lavado*, 28 Conn. Supp. 509, 512 (1970)*; Jubb v. Maslanka*, 22 Conn. Supp. 373, 375-77 (1961).

10

Furthermore, "although there is authority to the contrary," Connecticut courts have recognized that "the greater number of cases have regarded members of the family of the possessor as sharing possession with him, and hence as entitled to recover damages which they have sustained, on the basis of nuisance." *Simmons*, 2001 WL 419232, at *3 (citing W. Prosser & W. Keeton, *Torts* (5th Ed.1984) § 87, pp. 621-22). *See also Gesswin v. Beckwith*, 35 Conn. Supp. 89, 91 (1978) ("[i]n light of . . . the recent trend in the majority of courts which confers possessory status upon members of the family of the possessor of a property interest, the minor plaintiff . . . is found to have a property interest sufficient to form a basis for an action in private nuisance").

In sum, because the swimming pool was located upon property common to that of the Colonial Apartments where Ming Li was a tenant – operated on part of the premises over which Colonial retained control – and Ming Li  was permitted use of the pool as part of his tenancy, Plaintiffs may state a claim for private nuisance.  *See, e.g.*, *Simmons*, 2001 WL 419232, at *2 (denying motion to strike plaintiff's private nuisance claim against landlord regarding dangerous condition of pool "located on property appurtenant to house owned, controlled, possessed, and maintained by the defendants" and plaintiff leased a "separate apartment" at the same address).

The Court finds that, based on the facts alleged in the "Amended Complaint," Plaintiffs have alleged the essential elements of private nuisance.[6]  In particular, Plaintiffs have alleged that Ming Li was a tenant at the Colonial Apartments; Defendant operated a pool on the property of the

---

[6]  In their prayer for relief, Plaintiffs make no specific request for injunctive relief. Rather, they seek monetary damages ("in excess of $75,000, exclusive of interests and costs") "as well as any other relief which the Court may deem equitable." Doc. 7, at 10.  In the absence of a request for injunctive relief, the Court does not address the third potential element of "private nuisance" – if injunctive relief is sought, whether defendant's conduct will cause irreparable harm and there is no legal remedy.  *See  Pestey*, 259 Conn. at 352; 16A Conn. Prac., Elements of an Action § 18:1 (elements of private nuisance).

Colonial Apartments; the pool was open to tenants and members of the public; Defendant operated the pool in an unsafe manner, failing to redress a list of dangers; such dangers were unreasonable and unlawful in that Colonial was informed it must correct them when seeking a Connecticut pool license; and those dangers were the proximate cause of Ming Li's near-drowning injuries.[7]  Such factual allegations are sufficient to assert that Colonial unreasonably interfered with Plaintiff's use and enjoyment of the Colonial Apartments by operating a hazardous pool on the premises; and it was the operation of that pool that was "the proximate cause" of the unreasonable interference.

The Court next examines Plaintiffs' Third Count to determine whether it is vague and incomprehensible or adequately sets forth allegations to state a claim for public nuisance.

### 2.   **Public Nuisance**

With respect to the tort of "public nuisance," under Connecticut law, the essential elements are: (1) the condition complained of has a natural tendency to create danger and inflict injury upon persons or property; (2)  the danger created is a continuing one; (3) the use of the land is unreasonable or unlawful; and (4) the existence of the nuisance is the proximate cause of the plaintiff's injuries and damages. *See, e.g.*, *Sinotte v. City of Waterbury*, 121 Conn. App. 420, 438

---

[7]    For example, with respect to unlawful behavior, Defendant allegedly failed to meet the minimum operating requirements and conditions necessary to operate a public pool, as mandated by the State of Connecticut and North Central District Health Department, to obtain a pool license, Doc. 7, at 3-4, ¶¶ 3, 6-8; failed to provide the appropriate supervisory personnel in violation of Connecticut Department of Public Health Code 19-13-B33b; Doc. 7, at 5, ¶ 12.a.; failed to provide "appropriate lighting on the pool deck[,] . . .  pool surface and/or on the bottom of the pool in violation of "ANSI/NSPI - 1 Standard for Public Swimming Pools § 13.2, 13.2.1, 13.2.2, and 12.2.3," Doc. 7, at 5-6, ¶¶ 12.a., 12.g.; and  failed to provide "a certified pool operator in violation of applicable pool standard," Doc. 7, at 6, ¶ 12.h.

(2010); *Picco v. Town of Voluntown*, 295 Conn. 141, 146 (2010).[8]  To prove that a public nuisance

exists, a plaintiff must prove, *inter alia*, that "the condition or conduct complained of interferes with

a right common to the general public." *Keeney v. Old Saybrook*, 237 Conn. 135, 163 (1996).

In particular, a pool operated for public use may constitute a public nuisance if it poses a

continuing danger to the public and results in injuries.  As described *supra,* in the Amended

Complaint, Plaintiffs allege that "Colonial BT, LLC applied for and received a permit to operate a

*public* swimming pool at 1451 Foster Drive, from the State of Connecticut." Doc. 7, ¶ 3 (emphasis

added).  Plaintiffs further allege that the pool was "open for use to residents of the apartment

complex and their invited guests." *Id.*

If the members of the public were  allowed to swim in a hazardous pool, that pool may have

constituted a  "public nuisance" by creating a significant interference with public health and safety.[9]

*See* 4 Restatement (Second) *Torts*, § 821B (1979); *see also Boyne v. Glastonbury*, 110 Conn. App.

591, 606 (2008), *cert. denied*, 289 Conn. 947 (2008).  Access to the nuisance by the general public

is necessary for a public nuisance.  *See Boyne*, 110 Conn. App. at 607 (holding that because access

---

[8]     *See also* 16A Conn. Prac., Elements of an Action § 18:1.  In addition, the state has the
exclusive right to bring an action to abate certain categories of public nuisance. *See* Conn. Gen. Stat.
§ 19a-343b (captioned, "Remedies and relief necessary to abate public nuisance").

[9]     Conn. Gen. Stat. § 52-557f, captioned "Landowner liability for recreational use of land,"
includes liability for the "recreational purpose of swimming."  Connecticut courts have noted that
"public use [of a pool] should be decided on a case by case basis, and because there is no statutory
definition of 'public' in § 52-557f, a genuine issue of material fact [may] exist[ ] on this issue."
*Philipcik v. Richardson*, No. CV 91-0115963, 1993 WL 256396, at *3 (Conn. Super. Ct. July 1,
1993).  Although "the term 'public' has been used descriptively to describe use and purpose," the
Connecticut Supreme Court has stated that a public purpose must be distinguished from a private
purpose by the facts of each case.  *Philipcik*, 1993 WL 256396, at *3 (citing *Sachem's Head Ass'n
v. Bd. of Tax Review*, 190 Conn. 627, 629 (1983) to deny summary judgment for defendant where
pool could be viewed as open to the public despite fact that it was available to handicapped persons,
for therapeutic purposes, and their invited guests.).

to ditch creating nuisance was not on public land or a public right of way, and thus not "a right that was common to the general public," there was no public nuisance as a matter of law).  "The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights." *Spiegelhalter v. Hamden*, No. NNHCV095028239S, 2010 WL 626066, at *6 (Conn. Super. Ct. Jan. 15, 2010) (quoting *Boyne*, 110 Conn. App. at 606-07).  "A public nuisance is one that injures the citizens generally who may be so circumstanced to come within its influence." *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 369 (2001).

For example, in the context of a slip and fall by a person  lawfully on a  private college's premises, the deck of a collegiate swimming pool, the Connecticut Superior Court found there was no public nuisance because, as a permitted visitor,  plaintiff did not establish that she had  the right to be there simply as a member of the public.  *Donlon v. Connecticut College*, No. CV116011114S, 2012 WL 3264074, at *2 (Conn. Super. Ct. July 19, 2012).  The *Donlon* court explained:

> In the present case, the plaintiff alleges that she was lawfully on the property owned by the defendant when she was caused to slip and fall by the actions of the defendant. . . .[T]he plaintiff . . . does not allege that the defendant's premises was public property, nor does the plaintiff allege that she was on the premises exercising a public right. The plaintiff's allegation that the actions of the defendant had a natural tendency to create danger, unreasonably interfere with the use of the area and inflict injury upon members of the general public who visited the defendant's premises . . . do not allow for the inference that the public had a right to be on the premises, nor that the defendant's actions obstructed rights enjoyed by citizens as part of the public. . . .Consequently, the plaintiff has not stated a legally sufficient claim for public nuisance.

2012 WL 3264074, at *3 (citing *Ganim.*, 258 Conn. at 369).

Granted, "[i]n some jurisdictions and circumstances, an action in nuisance against the owner or operator of a nonresidential swimming pool may be brought."   58 Causes of Action 2d 1 (originally published in 2013) (citing *Wheeler v. Central Michigan Inns, Inc.*, 292 Mich. App. 300,

807 N.W.2d 909 (2011) (recognizing public nuisance regarding drowning of a five-year-old boy in a hotel swimming pool)). *See also* 49 A.L.R.3d 652 (public swimming pool as a nuisance). In some jurisdictions, by statute, any public swimming pool constructed, operated, or maintained contrary to the provisions of governing law may be a public nuisance dangerous to health. *See, e.g.,* Cal. Health & Safety Code § 116060.

In the case at bar, Plaintiffs have alleged that certain "safety concerns" which Defendant was required to address to obtain a state pool license "were not adequately and appropriately addressed and [the] use of the pool under such circumstances was unlawful and unreasonable." Doc. 7, at 9, ¶ 18. Moreover, the "condition of the subject swimming pool . . . had a natural tendency to create danger and inflict injury upon person and property." *Id.*, ¶ 19. The alleged danger of the pool "was a continuing one," "unlawful," "unreasonable, and constituted a nuisance to members of the general public," including Ming Li. *Id.,* ¶ 20. Lastly, the nuisance was "a proximate cause of [Ming Li's] injuries and damages." *Id.*, ¶ 21. All, in all, Plaintiffs' Count Three includes the essential elements for a public nuisance claim *provided that the dangerous pool was available to the general public*.[10]

---

[10]     According to the Connecticut Superior Court, "[a] person entering a premises at the express or implied invitation of a tenant or owner is not exercising a public right. Rather, that person is entering as a visitor . . . [who] cannot recover on a public nuisance claim." *Stewart v. Federated Dep't Stores, Inc*., 4 Conn. L. Rptr. 67, 1991 WL 88068, at *5 (Conn. Super. Ct. May 17, 1991) (citing *Webel*., 125 Conn. at 524-25). If, for example, Ming Li and other swimmers in the pool at the Colonial Apartments entered the premises solely as invitees, they have no claim for public nuisance. *See also Sullivan v. R.D. Scinto, Inc.*, No. CV 970060344S, 1998 WL 731162, at *2 (Conn. Super. Ct. Oct. 5, 1998) ("an invitee on private property cannot demonstrate a necessary element of a claim for public nuisance: the exercise of a public right"). *Cf.* n.9, *supra*.

In the present Amended Complaint, it remains unclear whether Ming Li was solely an "invitee" at the pool, Doc. 7, at 3, ¶ 4, or whether the pool was also accessible to him as a member of the general public. There are numerous allegations in the Amended Complaint which describe the pool as a public pool or a pool open to the public. *See, e.g., id.*, at 3, ¶ 3; at 4, ¶ 7; at 5, ¶ 12.a.; at 7, ¶ 12.p.; at 8, ¶ 12.aa.; and at 19, ¶ 20. If solely an invitee, Ming Li cannot bring a claim for public

### 3.  Ambiguity/ Lack of Clarity of Pleading

Although, as Plaintiffs allege, their Third Count includes elements of both a private and public nuisance claim, that fact does not fully  resolve Colonial's motion for a more definite statement.  The Court must decide whether Plaintiffs should separate the claims into two counts for purposes of clarity. Due to the combination of claims in the "Nuisance" count, Colonial "seeks a more definite statement [pursuant to Federal Civil Rule 12(e)] . . . because, as currently drafted, [Count Three] is so vague and ambiguous that Defendant cannot frame a responsive pleading." Doc. 17, at 1.

It is incumbent on the district court to decide whether several claims must be stated in separate counts, Rule 10(b) Fed. R. Civ. P., for purposes of clarity.   "[T]he Federal Rules of Civil Procedure only require a party to parse out his claims into separate counts when each claim is founded upon a separate transaction or occurrence and when separation would facilitate the clear presentation of the matters set forth."  *Pullen v. NorthStar Presidio Mgmt. Co.*, LLC, No. 98cv771 (WWE), 1998 WL 696010, at *2 (D.Conn. Sept. 11, 1998).  Thus, although "[a]  party asserting a claim may join, as independent or alternative claims, as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a), there is "ample warrant for requiring these several claims to be stated in separate counts, [Fed. R. Civ. P.] Rule 10(b)." *Vars v. Int'l Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers,* 204 F.Supp. 245, 249 (D.Conn. 1962).  The key issue in deciding if the claims should be separate is whether separation  "will further convenience, minimize confusion and avoid prejudice." *Vars,* 204 F.Supp. at 249 (citing generally Moore's

nuisance.  As presently drafted, the allegations in this regard conflict so that their meaning remains unclear.

Federal Practice, 2d Edition, Vol. 2., p. 2007, *et seq.*).

As the Second Circuit explained in *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187

(2d Cir.1943):

> Under Rule 10(b) a separation of claims into separate counts is mandatory only when necessary to facilitate clear presentation. Strictly, therefore, the issues presented are (1) whether the complaint and amended complaint allege but a single claim or cause of action and (2), if more than one claim is alleged, whether a separation of the claims is required to facilitate clear presentation of the matters set forth.

133 F.2d at 189 (internal citation omitted).

I find, as set forth *supra*, that separation of the nuisance claims in the Third Count will

facilitate clear presentation of the particular claims Plaintiffs alleged in their Amended Complaint.

Each form of nuisance has its own, albeit substantively overlapping, elements necessary to state a

claim.  By dividing the claims  into separate counts, Plaintiffs will clarify them so that Defendant

may meaningfully respond, thereby expediting litigation of this matter.  Accordingly, Plaintiffs must

file a second Amended Complaint separating the nuisance claims that they have attempted to assert

in the Third Count into separate counts.


## IV.  CONCLUSION

For all of the foregoing reasons, Defendant's Motion for a More Definite Statement [Doc. 17]

is GRANTED.  Plaintiffs shall file and serve a second amended complaint, separating their nuisance

claims into individual counts, setting forth factual allegations supporting their elements, and labeling

said  claims, on or before **October 19, 2015.**  The Court notes that a settlement conference is

currently scheduled to take place before Magistrate Judge Margolis on October 23, 2015.  Defendant

should review the newly amended complaint prior to the conference. If the parties fail to reach a

settlement at the scheduled conference, Defendant must answer or respond to the second amended

complaint  "within 14 days after service of the amended pleading," Fed. R. Civ. P. 15(a)(3).

It is SO ORDERED.

Dated:  New Haven, Connecticut
        September 28, 2015

                                              /s/Charles S. Haight, Jr.
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge